UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:14-CR-74-DCR-EBA-2

UNITED STATES OF AMERICA,                                         PLAINTIFF,

V.                        **MAGISTRATE JUDGE'S REPORT
                          AND RECOMMENDATION**

JEFFREY S. WINGATE,                                              DEFENDANT.

**INTRODUCTION**

Defendant Jeffrey S. Wingate pled guilty and was convicted under 21 U.S.C. § 841 for possession with intent to distribute oxycodone. [R. 162; R. 298]. Defendant was sentenced to one-hundred fifty (150) months of imprisonment to be followed by three (3) years of supervised release. [R. 298].  Defendant now challenges the imposition of that sentence in his *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. [R. 447]. Defendant makes three primary arguments. First, Defendant alleges his counsel was conflicted due to his prior representation of a government informant. [R. 447 at 4]. Second, Defendant alleges his counsel's ineffective assistance prevented him from entering a knowing and voluntary plea agreement. [*Id.* at 5]. Third, Defendant alleges his counsel coerced him into signing his plea agreement in order to avoid trial. [*Id.* at 6]. In addition, Defendant articulates a fourth argument: that the many mistakes of his counsel throughout his representation amounted to cumulative error resulting in prejudice. [*Id.* at 8]. The United States, however, refutes all of Defendant's arguments.

First, the United States notes that Defendant's counsel was not unlawfully conflicted. Defendant has failed to show that his counsel "was influenced in his basic strategic decisions by the interests of the former client." [R. 466 at 5 (quoting *United States v. Taylor*, 489 F. App'x 34,

43 (6th Cir. 2012))]. Second, the United States notes that any deficient performance by Defendant's counsel could not have precluded him from entering a knowing and voluntary plea agreement because "[t]he change-of-plea colloquy here included all the elements needed to establish a voluntary and knowing plea." [*Id.* at 10 (quoting *United States v. Powell*, 798 F.3d 431, 434 (6th Cir. 2015))]. Third, the United States notes that Defendant's new claims of coercion by his attorney to enter a plea agreement go "against his own statements at his rearraignment hearing." [*Id.* at 9]. "Wingate stated that no one had made any promises to him and no one had threatened or forced him to enter in the agreement." [*Id.* (citing R. 337 at 15 ¶¶ 12–20)]. Finally, the United States undermines Defendants' argument of cumulative error: "Where, as here, no individual ruling has been shown to be erroneous, there is no 'error' to consider, and the cumulative error doctrine does not warrant reversal." [*Id.* at 11 (quoting *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012)].

The matter is ripe for decision, following the submission the of Defendant's Reply, [R. 472]. For the reasons set forth below, the undersigned recommends that Defendant's Motion to Vacate, [R. 447], be **DENIED**.

## ANALYSIS OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Defendant brings his Motion to Vacate under 28 U.S.C. § 2255. Section 2255(a) provides that a prisoner in custody under a sentence of a United States Court may petition that court to amend his or her sentence upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, that the court imposing the sentence lacked jurisdiction to do so, that the sentence is excessive, or that the sentence is otherwise subject to collateral attack. Such a defendant must sustain any allegation by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) ("Defendants seeking to set aside their sentences

pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."); *see also Pough v. United States*, 442 F.3§d 959, 964 (6th Cir. 2006). If alleging a constitutional error, such a defendant must show the error "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Alternately, if alleging a non-constitutional error, such a defendant must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

Ineffective assistance of counsel is a constitutional ground on which a sentence may be challenged under Section 2255. *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). In evaluating such a challenge, the Sixth Circuit applies the two-prong test established in *Strickland*. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); *see also Strickland*, 466 U.S. at 687. Under *Strickland*, a defendant first must show his or her counsel was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, a defendant must show the deficient performance *actually* prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id. Both* elements must be shown. Thus, not only must the attorney's performance have been deficient, but that specific deficiency must also have been the antecedent without which the Defendant's sentence would not have been imposed. *Id.*

It is true that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. Nonetheless, an attorney representing a criminal

3

defendant does have some specific, articulable duties. All attorneys owe their clients a duty of loyalty; a duty to avoid conflicts; a duty to advocate, inform, and consult; and counsel has a duty "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* In evaluating an attorney's duties to his or her client and the sufficiency of an attorney's performance of them, however, courts must be highly deferential. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.*; *see also Engle v. Isaac*, 456 U.S. 107, 133–34 (1982); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2009). Indeed, there is a *presumption* of adequate representation. "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quotation and citation omitted).

### I. Whether Defendant's Counsel was Subject to a Conflict

Defendant alleges his counsel, Burl McCoy, was unconstitutionally conflicted through his prior representation of David Knell during a separate action in 2013. Defendant alleges Knell, who acted as a confidential informant for the United States, sought to obtain evidence of Defendant's misdeeds. [R. 447-1 at 3]. Defendant asserts his counsel's prior representation of Knell constitutes an actual conflict of interest under *Moss v. United States*, 323 F.3d 445 (6th Cir. 2003). In support of his argument, Defendant has submitted an affidavit, executed by Knell, wherein Knell attests that Defendant's counsel considered Defendant to be a "horrible" man. [R. 447-2 at 4]. Further, Defendant's counsel "urged [Knell] to cooperate with the government by recording audio with Jeff Wingate in hopes of obtaining time off my eventual sentence." [*Id.*]. In sum, Defendant alleges that his counsel's representation and statements to Knell in a separate action two years prior to his

representation of Defendant created an unconstitutional conflict, resulting in a valid claim of ineffective assistance. [R. 447-1 at 3–5].

"Joint, or dual, representation occurs where a single attorney represents two or more co-defendants in the *same* proceeding." *Moss v. United States*, 323 F.3d 445, 455 (6th Cir. 2003) (emphasis added). "Successive representation occurs where defense counsel has previously represented a *co-defendant or trial witness*." *Id.* at 549. Joint or successive representation of co-defendants, however, although suspect, "does not per se constitute ineffective assistance of counsel." *Id.* at 445. Further, "[i]t is more difficult for a defendant to show that counsel actively represented conflicting interests in cases of successive rather than simultaneous representation." *Id.* at 549. Nonetheless, there remains a risk of an unconstitutional conflict, especially in cases "where an attorney's former client serves as a government witness against the attorney's current client." [*Id.* at 460 (citing *United States v. McCutcheon*, 86 F.3d 187, 189 (11th Cir.1996); *United States v. Flynn*, 87 F.3d 996 (8th Cir.1996); *Enoch v. Gramley*, 70 F.3d 1490, 1496 (7th Cir.1995); *United States v. Malpiedi*, 62 F.3d 465 (2d Cir.1995); *Takacs v. Engle*, 768 F.2d 122, 125 (6th Cir.1985))].

"[I]n order to prevail on a claim of ineffective assistance of counsel as a result of a conflict of interest, a petitioner who has entered a guilty plea must establish: '(1) that there was an actual conflict of interest; and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered by the defendants.'" *Moss*, 323 F.3d at 467 (quoting *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987)); *see also Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980). To show an actual conflict of interest, a defendant "must point to specific instances in the record that suggest an actual conflict or impairment of [his or her] interests." *Thomas*, 818 F.2d at 481. A defendant further "must make a factual showing of inconsistent interests and demonstrate that the attorney made a

choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Id.* "But until a defendant shows that his counsel *actively* represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 350 (emphasis added). If a defendant establishes an actual conflict, he or she must also establish an adverse effect. To do so, a defendant must show "that 'counsel was influenced in his basic strategic decisions by the interests [of the former client],' as where the conflict 'prevents an attorney . . . from arguing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing the other.'" *Moss*, 323 F.3d at 446.

Although Defendant has succeeded in showing that some form of succeeding representation of criminal defendants exists here, [R. 447-2, *Exhibits 1 and 2*; R. 466-1 at 1 ¶ 2], Defendant has failed to show the presence of an "actual conflict of interest," that counsel was "influenced in his basic strategic decisions," or that counsel prevented Defendant from entering a knowing and voluntary guilty plea.[1] In fact, Defendant makes no specific claim of adverse effect anywhere in his Motion to Vacate, [*See, e.g.*, R. 447 at 3–5], other than his broad argument for the existence of a conflict. Further, the affidavit of David Knell is not grounds for finding either an actual conflict or an adverse effect. None of the claims of Knell bear on counsel's direct representation of Defendant in his own criminal proceeding, which was a separate action that occurred a full two years following counsel's representation of Knell. [R. 447–2 at 4; *compare* R. 447-2 at 2 (case terminated May 2013), *with* R. 298 (judgment entered April 2015)]. Knell and Defendant's proceedings were separate actions, separated by years. Knell was not a co-defendant of Defendant's in any case. Similarly, no evidence has been produced that Knell acted as a witness

---

[1] *Infra*, Part II.

6

in Defendant's case. As such, there is no evidence of an actual conflict of interest in this case. Defendant's argument of unconstitutionally conflicted representation fails.

Nonetheless, in passing, Defendant makes two subsidiary arguments. First, Defendant argues counsel represented Defendant's son-in-law, Morgan Culberson, throughout a criminal investigation simultaneously with counsel's representation of Defendant, thus presenting an unconstitutional conflict through joint representation. [R. 447-1 at 5–6]. Culberson, however, was not a co-defendant in Defendant's case, and Defendant has put forward no evidence that Culberson acted as a witness against Defendant. Defendant has produced no evidence of a conflict beyond his accusations. For that reason, this Court finds that there are insufficient facts in the record to find a conflict of interest in this case. *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) (there must be evidence that counsel actively represented conflicting interests).

Second, Defendant argues one of his attorneys, Brandon Marshall, who aided Defendant with sentencing, [R. 287], was engaged in the representation of both Defendant and his son-in-law, Culberson. [R. 447-1 at 7]. Here, Defendant attempts to make a connection between his admission to possessing a gun, [R. 296 at 1–2 ¶ 3], and Culberson's alleged denial of possession of that same gun, [R. 447-1 at 7]. Again, Culberson was never Defendant's co-defendant and Defendant has produced no evidence that Culberson acted as a witness against Defendant for the United States. [R. 466 at 7]. Defendant, however, argues that this representation lead to the imposition of a sentencing enhancement under the United States Sentencing Guidelines for Defendant's possession of a gun.[2] [R. 447-1 at 7; R. 296 at 3 ¶ 5(c)]. Defendant, however, forgets that he admitted to possessing the gun at issue in the execution of his Plea Agreement, to which he attested his assent under oath at his Rearraignment. [R. 337 at 11 ¶ 15–15 ¶ 11, 15 ¶ 6–11 (THE

---

[2] Defendant's Plea Agreement recommended his sentence be enhanced by two levels for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1). [R. 296 at 3 ¶ 5(c)].

COURT: "Mr. Wingate, were you able to hear Mr. Duncan as he was reviewing your plea agreement?" DEFENDANT: "Yes, sir." THE COURT: "Did he accurately summarize it as you understand it?" DEFENDANT: "Yes, sir.")]. It also unclear how Defendant's admission to possessing a gun is directly related to Culberson's alleged denial of possession of a gun. Further, possession is not an exclusive concept, and even if Culberson had admitted to possession the gun, that would not preclude Defendant from constructively possessing it as well.

"Possession may be either actual or constructive and it need not be exclusive but may be joint." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977) (citing *United States v. Black*, 472 F.2d 130 (6th Cir. 1972); *United States v. Holt*, 427 F.2d 1114 (8th Cir. 1970)). Constructive possession exists "when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* "Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (quoting *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993) (per curiam)). Joint possession exists when two or more people share actual or constructive possession over an object. *United States v. Chesney*, 86 F.3d 564, 573 (6th Cir. 1996) ("[T]wo or more persons may share possession of an item.").

The firearm at issue was discovered inside Defendant's residence, along with 2,500 oxycodone pills, and $200,000.00 cash. [R. 296 at 2 ¶ 3]. Defendant stipulated his possession of all of those items. [R. 296 at 2 ¶ 3]. Even if Defendant had denied possession of those items and the gun, however, Defendant also stipulated that the United States could prove beyond a reasonable doubt his possession of those items and the gun. [*Id.*]. Further, even if Culberson had admitted

possession of the gun, that would not preclude Defendant's joint possession of that same gun with Culberson, as the gun was found in Defendant's residence, as he stipulated. [*Id.*].

Defendant has provided this Court with no factual evidence of an actual conflict. Likewise, Defendant has failed to produce evidence of a connection between Culberson's denial of possession of a gun, and Defendant's admission to possession of a gun, or even that a connection between the two would be relevant. Thus, there are insufficient facts to find an adverse effect as well, even assuming the presence of a conflict. Further, no case was ever brought against Culberson, Culberson and Defendant were not co-defendants, and Defendant has produced no evidence that Culberson acted as a witness against Defendant. There are simply insufficient facts to support a claim of an unconstitutional conflict of interest in this case.

## II. Whether Defendant Knowingly and Voluntarily Entered his Plea

Defendant's second and third arguments are that counsel's ineffective assistance prevented him from knowingly and voluntarily entering his guilty plea, and that Defendant's counsel misrepresented the crime and plea agreement to Defendant, coercing him to enter a guilty plea to avoid trial. [R. 447-1 at 8–21]. Defendant makes a variety of claims in support of these two assertions. In sum, Defendant argues his counsel failed to understand the crimes with which Defendant was charged, [*Id.* at 8–11]; failed to investigate the evidence against Defendant and failed to challenge the amount of drugs attributed to Defendant, [*Id.* at 11–12, 16–18]; failed to challenge the use of unlawfully obtained evidence against Defendant, [*Id.* at 12–15]; failed to object to Defendant's leadership enhancement, [*Id.* at 18–19]; and coerced Defendant into entering a plea agreement, rather than proceed to trial, [*Id.* at 19–21]. Each of these arguments—all of which fail—shall be addressed in turn.

9

### A. Whether Counsel Misunderstood the Nature of the Offense

Defendant alleges his counsel mistook the 21 U.S.C. § 841 offense (possession with intent to distribute) to which Defendant plead for an offense under 21 U.S.C. § 846 (conspiracy). [*Id.* at 8–11]. Defendant did plead guilty to an offense under 21 U.S.C. § 841. [R. 298]. Nonetheless, "[c]ounsel McCoy believes that Wingate is instead charged with 21 U.S.C. § 846." [R. 447-1 at 8]. Defendant alleges this "confusion" resulted in prejudice. [*Id.*]. Here, however, there was no mistake: Defendant *was* charged with an offense under 21 U.S.C. § 846. [R. 9 at 2, *Count 2*].[3] That charge was in addition to the charge Defendant plead to under 21 U.S.C. § 841. [R. 9 at 7, *Count 17*]. Therefore Defendant's counsel was exactly right in believing Defendant had been charged with an offense under 21 U.S.C. § 846. There was no mistake. Defendant's counsel cannot be ineffective for being correct about his client's charges.

### B. Whether Counsel Adequately Investigated and Challenged the Evidence

Defendant alleges his counsel failed to independently investigate the drug weight attributed to Defendant, resulting in prejudice. [R. 447-1 at 11–12]. This accusation, however, neglects to acknowledge the fact that Defendant—cooperating with the United States—stipulated being "responsible for conspiring to distribute approximately 20,000 Oxycodone 30 milligram pills." [R. 296 at 1–3 ¶ 3]. Similarly, Defendant's counsel attests that Defendant "was in fact cooperating with law enforcement with most of the information concerning weights and amounts on the plea agreement coming from him." [R. 466-1 at 4 ¶ 5; *see also* R. 296 at 1–3 ¶ 3]. Defendant approved of his stipulation to the type and weight of the drugs he distributed at his Rearraignment as well. [R. 337 at 29 ¶ 24–30 ¶ 8 (THE COURT: "Is the information that's contained in paragraph 3 of your plea agreement true and correct to the best of your knowledge and belief? You can take a

---

[3] The United States moved to dismiss this charge in Defendant's Plea Agreement. [R. 296].

moment to look over that again, if you'd like." [] DEFENDANT: "Yeah, I agree." THE COURT: "Is that correct, Mr. Wingate?" DEFENDANT: "Yes, sir.")]. Defendant has failed to produce evidence that his counsel failed to independently investigate his drug weight. Further, the only evidence in the record reflects Defendant's own admission to the type and weight of the drugs he distributed. Thus, no prejudice could be inferred, even if deficient performance were presumed.

Defendant also alleges his counsel failed to seek a reduction in the quantity of drugs attributed to Defendant for his self-use of those drugs. [R. 447-1 at 16–18]. Defendant produces no evidence that he requested his counsel to seek such a reduction. Defendant's counsel attests, however, that he did seek a reduction in Defendant's base offense level under the United States Sentencing Guidelines for Defendant's personal use of the drugs. [R. 466-1 at 4 ¶ 5]. In any event, notes of Defendant's personal use of the drugs he distributed appear throughout his Presentence Report and his Sentencing Memorandum, which was prepared by his counsel. [*See, e.g.*, R. 287 at 3 ("Paragraph 86's reference [in Defendant's Presentence Report] to '25 to 30 oxycodone 80 milligram tablets per day' naturally sounds impossible to anyone familiar with the drug's potency. Yet Jeff knows, sadly, that it is possible, particularly when one suffers pain so steadily that it makes one ponder suicide."); R. 305, *Defendant's Presentence Report*, ¶¶ 36, 78, 82, 86]. Defendant has produced no evidence to prove his claim. The only evidence in the record negates his claim. Counsel made direct reference to Defendant's self-use in Defendant's Sentencing Memorandum. In the absence of evidence to support it, Defendant's claim fails. *Strickland*, 466 U.S. 668, 688–89 (1984).

Defendant also argues his counsel failed to challenge the consideration of evidence unlawfully obtained against Defendant. [R. 447-1 at 12–15]. Specifically, Defendant argues his counsel should have objected to the consideration of wire-tap evidence he believes was obtained

11

without probable cause by filing a motion to suppress. [*But see* R. 466-1 at 3 ¶ 4 (counsel attesting that, in his "professional opinion," the affidavit through which the wire taps were permitted established probable cause.)]. This "[C]ourt must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. 668, 689. Aside from his statements, Defendant has put forth no evidence that a motion to suppress was called for. Similarly, Defendant has put forth no evidence that he requested his counsel to file a motion to suppress at any point during the criminal proceedings of his case. [R. 447-1 at 12–15]. And Defendant stipulated his guilt not only through his Plea Agreement but in open court at his Rearraignment. [*See generally* R. 269; R. 337]. In the absence of evidence to support of his claims, Defendant fails to rebut the presumption that his counsel's conduct was reasonable. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

## C. Whether Counsel was Ineffective for Failing to Object to Defendant's Leadership Role

Defendant argues that his counsel was ineffective for failing to object to the leadership enhancement recommended under the United States Sentencing Guidelines, [R. 305 at 10 ¶ 53], and his Plea Agreement, [R. 296 at 3 ¶ 5(d)]. Defendant is insistent that the United States' evidence of his leadership role is nothing more than evidence of a buyer-seller relationship. [R. 447-1 at 18– 19]. Defendant, who plead guilty to possession and intent to distribute oxycodone under 21 U.S.C. § 841, believes his counsel's "failure to object to the leadership role serves as further proof that McCoy was confused as to what crime with which Wingate was charged." [*Id.* at 19]. Defendant forgets, however, that he stipulated sufficient facts in his Plea Agreement and at his Rearraignment to justify a leadership enhancement under U.S.S.G. § 3B1.1(a) (requiring a four-level enhancement because the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive). [R. 296 at 2 ¶ 3; *id.* at 3 ¶ 5(d); *see generally* R. 337].

Defendant, in his Plea Agreement, specifically stipulated that, after obtaining oxycodone and heroin from out of state suppliers, "he would consign to Gonzalez 100 Oxycodone 30 milligram pills at a time. . . . Gonzalez, and others working for him, including Spence, would distribute the pills to their customers. Gonzalez would collect the money, pay Wingate for the consigned pills, and obtain more pills for distribution." [R. 296 at 2 ¶ 3].

It is true that Defendant's counsel did not object to Defendant's leadership role. [R. 466-1 at 4 ¶ 6]. But this is because, in counsel's professional judgment, "Mr. Wingate was clearly the leader and organizer of the drug ring to distribute oxycodone and heroin in Montgomery County, Kentucky." [*Id.*]. Further, as counsel explains, "[i]n numerous interviews with law enforcement, he admitted his leadership. In telephone conversations by various co-defendants, he was referred to as 'Big Dog.'" [*Id.*]. And, "[i]n paragraph 5(d) of the plea agreement, Wingate admitted being a leader." [*Id.*; R. 296 at 3 ¶ 5(d)]. "By definition," counsel cannot be ineffective for a failure to raise an issue that lacks merit. *Greer v. Mitchell*, 264 F.3d 663, 677 (6th Cir. 2001). In addition to all of the above, Defendant specifically stated his guilt, and the fact that the United States could prove his guilt if required, at his Rearraignment:

> THE COURT: If the case proceeded to trial, the government would be required to prove two elements to obtain a conviction under Count 17. First, that you possessed a quantity of pills containing oxycodone, which is a Scheduled II controlled substance; and, second, that you possessed the pills with the intent to distribute. I said there were two. There are actually three. And, third, you did so knowingly and intentionally. If this case proceeded to trial, do you believe the government could prove those three elements to obtain a conviction and could do so by the standard that's required, which is beyond a reasonable doubt?
>
> DEFENDANT: Yes, sir.

[R. 337 at 30 ¶ 9–22]. Defendant's argument here is misplaced. He puts forward no affirmative evidence in support of his claim, and the only evidence in the record with regard to his leadership role is his own admission of being a leader in his Plea Agreement and Rearraignment. [*See, e.g.*,

*id.*; R. 296 at 3 ¶ 5(d)]. Defendant's argument fails as misplaced and for an absence of evidence to support it.

Defendant's "buyer-seller" argument is similarly unsuccessful. The "buyer-seller" rule is an exception to the general conspiracy rule, criminalized by 21 U.S.C. § 846, which provides that where the purchaser of illicit substances is also the ultimate user of those substances, and there is an absence of evidence tending to show an agreement to distribute with others, conspiracy will not be found. *See United States v. Anderson*, 89 F.3d 1306, 1310–11 (6th Cir. 1996); *United States v. Cole*, 59 F. App'x 696, 699 (6th Cir. 2003); *United States v. Dietz*, 577 F.3d 672, 680–81 (6th Cir. 2009). This rule, however, has no application in this case. Defendant, although *charged* with conspiracy under 21 U.S.C. § 846, was not *convicted* of that crime. [R. 296; R. 298]. Rather, Defendant plead guilty and was convicted for possession and intent to distribute oxycodone under 21 U.S.C. § 841, [R. 296; R. 298]. The United States moved to dismiss Defendant's conspiracy charge, [R. 296], and he was not convicted of that crime, [R. 298]. As such, the buyer-seller rule does not apply. Defendant's argument is misplaced.

### D. Whether Defendant was Coerced into Entering his Plea Agreement

Defendant's final argument in support of his position is that his counsel coerced him into signing his Plea Agreement, rather than proceed to trial, [R. 447-1 at 19–21]. Defendant also alleges his counsel promised him a minimum security camp and other accoutrements of a low-risk prisoner. [*Id.*]. The transcript of Defendant's Rearraignment, however, leads to the conclusion that Defendant's decision to plead guilty to possession and intent to distribute oxycodone under 21 U.S.C. § 841 was entirely his own. First, Defendant was fully apprised of the charges against him. Defendant, under oath, affirmed his understanding of the charges against him, the accuracy of the factual statements in his Plea Agreement, and affirmed his guilt:

THE COURT: Count 17 alleges that on or about June 12th, 2014, in Madison County, in the Eastern District of Kentucky, you did knowingly and intentionally possess with intent to distribute a quantity of pills containing oxycodone, a Schedule II controlled substance, in violation of Title 21 of the United States Code, Section 841(a)(1). . . . Mr. Wingate[,] I would like for you to tell me at this time, if you can, in your own words what it was that you did to be guilty of the substantive charge.

DEFENDANT: I had been to Westin, Florida, to go to Cleveland Clinic to have a Rituxan infusion. And while I was there, I met a guy that I had met through a pain clinic situation, not exactly him, but I met somebody at pain clinic situation a year or so ago that introduced me to this guy. And I had picked up the oxycodone pills from him after I went to the hospital there in Westin, Florida. Then on the way home I got pulled over in a traffic stop.

THE COURT: Alright. Did this occur, the incident that you're telling me about, on or about June 12th of 2014?

DEFENDANT: Yes, sir. I think it was June 12th.

THE COURT: All right. Did the traffic stop occur in Madison County, which is in the Eastern District of Kentucky?

DEFENDANT: Yes, it did.

THE COURT: And the pills that you had were, in fact, oxycodone pills; is that correct?

DEFENDANT: Yes, sir.

THE COURT: Was it your intention to distribute
a quantity of those pills—

DEFENDANT: Yes, sir.

THE COURT: —to other individuals? Your plea agreement has a factual statement that's contained, I believe, in paragraph 3, which is set forth in your plea agreement on pages 2 and then on the top of page 3 as well. I know you've had the opportunity to review that factual statement with your attorney. Is the information that's contained in paragraph 3 of your plea agreement true and correct to the best of your knowledge and belief? You can take a moment to look over that again, if you'd like.

COUNSEL: If the Court please, we agree with the statement.

DEFENDANT: Yeah, I agree.

THE COURT: Is that correct, Mr. Wingate?

DEFENDANT: Yes, sir.

THE COURT: If the case proceeded to trial, the government would be required to prove two elements to obtain a conviction under Count 17. First, that you possessed a quantity of pills containing oxycodone, which is a Scheduled II controlled substance; and, second, that you possessed the pills with the intent to distribute. I said there were two. There are actually three. And, third, you did so knowingly and intentionally. If this case proceeded to trial, do you believe the government could prove those three elements to obtain a conviction and could do so by the standard that's required, which is beyond a reasonable doubt?

DEFENDANT WINGATE: Yes, sir.

THE COURT: And is it your intention to enter a plea of guilty to Count 17 because you are, in fact, guilty of that charge and for no other reason?

DEFENDANT: Yes, sir.

. . .

THE COURT: Mr. Wingate, what is your plea to Count 17 and to the forfeiture allegation?

DEFENDANT: Guilty.

[R. 337 at 26 ¶ 20–27 ¶ 1, 28 ¶ 14–17; *id.* at 28 ¶ 18–29 ¶ 2; *id.* at 29 ¶ 3–5; *id.* at 29 ¶ 6–31 ¶ 1; *id.* at 31 ¶ 20–22]. Defendant was also fully apprised of the potential penalties against him, the factors to be considered by the court in determining his penalties, and the fact that the penalties recommended in his Plea Agreement were not binding on the court. [*Id.* at 15 ¶ 21–20 ¶ 16, *see, e.g.*, *id.* at 23 ¶ 10–17 (THE COURT: "[I]f the sentence that's imposed in your case would be more severe than you expect, while you might be able to appeal the sentence under the circumstances that we discussed, generally that would not be a reason to withdraw from the plea agreement itself, that this would still be binding [on you]. You do understand that?" DEFENDANT: "Yes, sir."]. Finally, Defendant assured the court he had not been coerced, and that the Plea Agreement was entirely his own. [*Id.* at 15 ¶ 12–20].

16

Defendant, under oath, assured the court that he had not been threatened, coerced, or otherwise forced to enter his plea agreement:

> THE COURT: Other than what's contained in the plea agreement and the supplement, has anyone else made any promises to you that have caused you to either sign these documents or to enter a guilty plea this morning?
>
> DEFENDANT: No, sir.
>
> THE COURT: Has anyone made any threats or in any way forced you to either sign the documents or to enter a guilty plea?
>
> DEFENDANT: No, sir.

[*Id.*]. Rather than proceed to trial, Defendant voluntarily and informedly chose to openly plead guilty to possession and intent to distribute oxycodone. [*Id.*]. Now, Defendant seeks to refute his previous statements with this Motion to Vacate. Based on the evidence contained in the Record, however, it does not appear Defendant's counsel was deficient in any way. Nowhere does Defendant provide evidence that his decisions were involuntary, [*See generally* R. 447-1; R. 447-2; R. 472], and the transcript of Defendant's Rearraignment belies his claims, [*See generally* R. 337]. This Court cannot find that counsel coerced Defendant into signing his Plea Agreement, when there is zero evidence to support such a finding, and the only evidence in the record belies the claim.

This Court, assuming for sake of argument the deficient performance of Defendant's attorney, also can find no prejudice here. The court ensured Defendant understood the consequences of his statements, his potential sentence, and ensured Defendant was voluntarily and knowingly entering his plea. [*See generally* R. 337, *Transcript of Rearraignment*]. "The established general rule is that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel."

*Sepulveda v. United States*, 69 F. Supp. 2d 633, 641 (D.N.J. 1999) (holding that an adequate Fed. R. Crim. P. 11 colloquy "eliminates any arguable prejudice" in an ineffective assistance of counsel claim with regard to the outcome of a guilty plea); *see also United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990). For "[t]he question, of course, is not whether counsel was topnotch, but whether he or she functioned at the level required by the Sixth Amendment." *Greer v. Mitchell*, 264 F.3d 663, 673 (6th Cir. 2001). Defendant has failed to produce any evidence sufficient to overcome the presumption of adequate counsel at plea negotiation. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). And, even assuming inadequate counsel, no prejudice can be said to have resulted, because of the court's Fed. R. Civ. P. 11 colloquy. *Sepulveda*, 69 F. Supp. 2d 633. Thus, Defendant's counsel was not ineffective. His second and third arguments fail.

### III. Whether Defendant's Attorney was Ineffective for Cumulative Error

Defendant's final argument is one of cumulative error. [R. 447-1 at 21]. Under that doctrine, "[t]he cumulative effect of errors that are harmless by themselves can be so prejudicial as to warrant a new trial." *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012). In order for the doctrine to apply, however, the cumulative effect of the errors must be so severe as to deprive the defendant the fundamental guarantees of due process. *Id.* This doctrine has no application in this case. "Where, as here, no individual ruling has been shown to be erroneous, there is no 'error' to consider, and the cumulative error doctrine does not warrant reversal." *Id.* (citing *United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009)). Defendant's fourth and final argument fails.

### CONCLUSION

Although it is the duty of this Court to review Defendant's *pro se* Motion to Vacate, according to "less stringent standards than formal pleadings drafted by lawyers," there is no question that Defendant has failed to state a basis on which his Motion to Vacate should be granted.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Strickland v. Washington*, 466 U.S. 668 (1984). Defendant has failed to support his allegation of ineffective assistance of counsel. Accordingly, the undersigned recommends that Defendant's Motion to Vacate, [R. 447], be DENIED. Likewise, the undersigned also recommends that this action be dismissed with prejudice and stricken from the court's active docket.

Particularized objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service of the same or further appeal is waived. 18 U.S.C. § 636(b)(1); *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). Generalized objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

This the 25th of January, 2018.

Signed By:

*Edward B. Atkins*

United States Magistrate Judge