UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 5: 14-74-DCR |
| Plaintiff, ) | and |
| ) | Civil Action No. 5: 17-253-DCR |
| V. ) | |
| ) | |
| JEFFREY S. WINGATE, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Movant/Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Movant/Defendant Jeffrey Wingate's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. [Record No. 447] The motion was referred to United States Magistrate Judge Edward B. Atkins for review and issuance of a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Atkins issued a R&R on January 25, 2018, recommending that the motion be denied. [Record No. 474] Wingate filed his amended objections to the R&R on February 20, 2018.[1] [Record No. 480]

---

[1] The Court granted, in part, Wingate's motion for extension of time to file objections to the R&R on February 6, 2018, and ordered that objections to the R&R must be filed no later than February 20, 2018. [Record No. 476] Before receiving the Court's Order, Wingate tendered initial objections to the R&R on February 13, 2018, along with a motion to allow him to append, amend or supplement them. [Record Nos. 477, 478] He filed his amended objections on February 20, 2018, along with a second motion to amend or supplement his initial objections, and instructions to consider his amended objections in place of the objections he previously filed. [Record No. 480] Because Wingate's amended objections were filed by February 20, 2018, the Court will grant his first motion to amend his initial objections, and consider his amended objections in their place. [Record No. 477] Because Wingate's second motion requests this same relief, it will be denied as moot. [Record No. 480]

Although this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which objections are made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Nevertheless, the Court has examined the record and, having conducted a *de novo* review of the matter, agrees with the Magistrate Judge.

## I.

Law enforcement officers conducted a traffic stop on June 12, 2014, and found Defendant Wingate in possession of three ounces of heroin and approximately 1,100 Oxycodone 30 milligram pills. [Record No. 296] They subsequently found 2,500 Oxycodone 30 milligram pills and a .38 caliber revolver in a pool house on Wingate's property. The officers also found firearms and approximately $200,000 inside the main residence. [*Id.*] Wingate was arrested and admitted to conspiring to distribute Oxycodone pills and heroin during a *Mirandized* interview. [*Id.*] He was charged with one count of conspiring to distribute heroin, three counts of possessing with intent to distribute heroin and Oxycodone, and one count of being a felon in possession of a firearm. [Record No. 9] Because Wingate "had already confessed to his involvement with the drugs," and "stated [that] it was his desire to cooperate with law enforcement to possibly reduce his sentence," Wingate's attorney recommended entering into a plea agreement. [Record No. 466-1, ¶¶ 4-5]

Wingate pleaded guilty to one count of possessing Oxycodone pills with intent to distribute in violation of 21 U.S.C. § 841(a)(1). [Record No. 296] Wingate admitted in the plea agreement that he conspired with others to distribute Oxycodone and heroin by obtaining

the drugs from an out-of-state supplier and then selling them to his co-conspirators, who in turn sold them to customers. [*Id.*] The plea agreement also recommended the following guidelines calculations: a base offense level of 32 under United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(c)(4), based on the marijuana equivalency for the amount of Oxycodone pills and heroin attributable to Wingate; a two-level offense level increase under U.S.S.G. § 2D1.1(b)(1), based on Wingate's possession of a dangerous weapon; a four-level offense level increase under U.S.S.G. § 3B1.1(a), because Wingate was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive; and a two or three-level offense level decrease under U.S.S.G. § 3E1.1, based on Wingate's acceptance of responsibility. [*Id.*]

Consistent with the recommendations in the plea agreement, the Presentence Investigation Report ("PSR") prepared in advance of Wingate's sentencing hearing provided for a base offense level of 32 based on the marijuana equivalency for the amount of Oxycodone pills and heroin attributable to Wingate. It also recommended a two-level increase for possession of a dangerous weapon, a four-level increase for being the organizer or leader of criminal activity involving five or more participants, and a three-level reduction for acceptance of responsibility. [Record No. 305, ¶¶ 50-58] The resulting total offense level was 35. [*Id.* ¶ 58] When combined with Wingate's criminal history (Category I), this produced a guideline imprisonment range of 168 to 210 months. [*Id.* ¶ 99]

The parties did not object to the PSR, and the Court adopted its findings and guidelines calculations at the sentencing hearing. [Record No. 338, p. 3] The Court also noted that the enhancements the PSR applied were well supported. [*Id.* at 8] A sentence in the middle of the guideline range would have been 189 months imprisonment. [*Id.*] However, the Court

sustained the government's motion for a 20 percent reduction, and reduced the sentence by 39 months to 150 months imprisonment. [*Id.* at 18-19, 27-28]

Wingate now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. [Record No. 447] He makes the following three arguments in support of his motion: (i) his counsel was conflicted due to prior representation; (ii) his counsel's ineffective assistance and coercion prevented him from entering into a knowing and voluntary plea agreement; and (iii) his counsel's many mistakes resulted in cumulative error. [*Id.*] For the reasons that follow, and those stated by the Magistrate Judge, the Court finds each argument to be unpersuasive. Accordingly, Wingate's § 2255 motion will be denied.

## II.

Wingate's first argument is that his counsel was unconstitutionally conflicted based on (i) his prior representation of government informant David Knell during a separate action in 2013, and (ii) legal advice he allegedly gave to Morgan Culberson (Wingate's son-in-law) during the criminal investigation. [Record No. 447-1, p. 3, 5-6] Wingate also contends that attorney Brandon Marshall, who assisted him at sentencing, was unconstitutionally conflicted based on his representation of Culberson during the criminal investigation. [*Id.* at 7] In particular, Wingate alleges that his attorney and Marshall told Culberson to deny possession of the firearm found in the pool house and instructed Wingate to admit possession of that same gun. [*Id.* at 5-8]

"[T]o prevail on a claim of ineffective assistance of counsel as a result of a conflict of interest, a petitioner who has entered a guilty plea must establish: '(1) that there was an actual conflict of interest; and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered by the defendants.'" *Moss v. United States*, 323 F.3d 445, 467 (6th Cir. 2003)

(quoting *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987)). To show an actual conflict of interest, a defendant "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Thomas*, 818 F.2d at 481 (quotation marks and citations omitted). To show an adverse interest, a defendant must demonstrate that "counsel was influenced in his basic strategic decisions by the interests of the former client as where the conflict prevents an attorney from arguing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing the other." *Id.* at 466. "Joint, or dual, representation occurs where a single attorney represents two or more co-defendants *in the same proceeding*." *Id.* at 455 (emphasis added). "Successive representation occurs where defense counsel has previously represented *a co-defendant or trial witness*." *Id.* at 459 (emphasis added).

Knell and Culberson were not co-defendants or witnesses in this action. Wingate's attorney (McCoy) did not represent Culberson, and Wingate has not shown that McCoy's prior representation of Knell several years before the instant action affected any strategic decisions. Further, Wingate's claim that his attorneys pressured him to admit possession of the gun so they could contend that Culberson did not possess the gun fails because possession is not an exclusive concept. In other words, whether or not Culberson possessed the gun would have no conclusive effect on whether or not Wingate possessed the gun. *See United States v. Chesney*, 86 F.3d 564, 573 (6th Cir. 1996) ("[T]wo or more persons may share possession of an item."). As a result, the Magistrate Judge correctly determined that Wingate failed to show either an actual conflict or adverse effect, and Wingate's claim that his attorneys were unconstitutionally conflicted is unavailing.

## III.

Next, Wingate argues that his counsel's ineffective assistance and coercion prevented him from entering into a knowing and voluntary plea agreement. [Record No. 447-1, pp. 8-21] In support, Wingate alleges that his counsel failed to (i) understand the crimes with which he was charged; (ii) investigate the evidence and challenge the amount of drugs attributed to him; (iii) challenge the use of wiretap evidence; and (iv) object to the leadership role enhancement to his offense level. [*Id.*]

Wingate's claim that his counsel misunderstood the crime with which he was charged is based primarily on his counsel's statement at sentencing that Wingate became addicted to OxyContin after it was prescribed for his medical conditions, and "it blossomed into this criminal conspiracy," creating "a terrible, terrible situation." [Record No. 338, pp. 11-12] Wingate argues that this statement demonstrates that his counsel mistakenly believed that he was "charged with 21 U.S.C. § 846: Conspiracy to distribute Oxycodone." [Record No. 447-1, p. 8] However, as the Magistrate Judge correctly noted, Wingate *was* charged with a conspiracy offense: conspiracy to distribute heroin. [*See* Record No. 9, Count 2] As a result, his counsel's reference to a "criminal conspiracy" at the sentencing hearing does not demonstrate that his counsel misunderstood the charges Wingate was facing.

Wingate also contends that his counsel's misunderstanding of the charges against him is evidenced by his counsel's failure to object to the following statement in the plea agreement:

> The Defendant acknowledges that he is responsible for conspiring to distribute approximately 20,000 Oxycodone 30 milligram pills. This number is based on the Defendant acquiring approximately 1,000 pills every two weeks (approximately 2,000 pills per month) from September 2013 through May 2014, and includes the Oxycodone pills found in the Defendant's possession during the traffic stop on June 12, 2014, and the Oxycodone pills found during the execution of the search warrant on his residence the same day.

[Record No. 296, ¶ 3] The drug types and weights contained in this statement were used in determining the amount of drugs attributable to Wingate for purposes of calculating his base offense level under U.S.S.G. § 2D1.1(c)(4). [*See id.* ¶ 5(b); Record No. 305, ¶¶ 36, 50.]

Wingate's attorney stated in a sworn affidavit that Wingate "agreed with [the] type, number[,] and weight" of the drugs listed in his plea agreement, and that in fact "most of the information concerning weights and amounts [i]n the plea agreement [came] from him." [Record No. 446-1, ¶ 5] Further, "Wingate admitted to the number and weight of pills and capsules in the interviews, plea agreement[,] and PSR." [*Id.* ¶ 7]

Nonetheless, Wingate now contends that, because he pled guilty to possession with intent to distribute Oxycodone and was not charged with conspiracy to distribute Oxycodone, his attorney should have challenged any drug weight beyond the amount he was actually found to possess. [Record No. 447-1, p. 10 ("Seeing that § 841 is based upon actual possession, McCoy should have argued that Wingate's drug weight could not exceed 1,000 pills retrieved from his vehicle upon his arrest, and the 2,400 pills recovered from Wingate's pool house.")] He further argues that it was improper for the Court to base his sentence in part on the larger amount of Oxycodone he admitted to conspiring to distribute in his plea agreement. [*Id.*]

However, the fact that Wingate was not charged with conspiracy to distribute Oxycodone does not mean that it was improper to consider the amount of Oxycodone pills he admitted to conspiring to distribute in determining his sentence. "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, Background. And "in a drug distribution case," such as this one, "quantities and types of drugs not specified in the count of

conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *Id.*

Wingate admitted in his plea agreement that he was "responsible for conspiring to distribute approximately 20,000 Oxycodone 30 milligram pills" and that "he conspired to distribute 5 ounces of heroin." [Record No. 296, ¶ 3] It is abundantly clear from the plea agreement that these drugs and quantities were "part of the same course of conduct or part of a common scheme or plan as the count of conviction." [*See id.*] Further, the plea agreement and PSR, to which Wingate did not object, contained recommended guidelines calculations based on these admissions. [*See id.* ¶ 5(b); Record No. 305, ¶¶ 36, 50] And Wingate attested under oath that he had reviewed the factual statements contained in his plea agreement and agreed that they were correct. [Record No. 337, pp. 29-30] Thus, there was no error in using the drug weights contained in the plea agreement at Wingate's sentencing hearing, and Wingate's attorney's failure to object to the factual statement in the plea agreement does not demonstrate that he misunderstood the offense of conviction.

Wingate argues for the first time in his objections to the R&R that the Court did not conduct an adequate Rule 11 colloquy to ensure that the factual statements in his plea agreement were made knowingly and voluntarily. [Record No. 480-1, pp. 6-8, 14-20] Under Rule 11, the Court is required to "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises" before accepting a guilty plea, and to "determine that there is a factual basis for the plea" before entering judgment on a guilty plea. Fed. R. Crim. Pro. 11(b)(2)-(3). To that end, the Court established that Wingate understood the terms of his plea agreement and the consequences of pleading guilty, and that no one had made any promises to him or threatened or forced him to enter into

the agreement, during the change of plea hearing. [Record No. 337, pp. 10-18] At the conclusion of the hearing, the Court determined that Wingate was "fully competent and capable of entering an informed plea" and that Wingate's plea of guilty was a "knowing and a voluntary plea . . . supported by an independent basis in fact." [*Id.* at 32] The Court also conducted the following colloquy regarding the factual statement contained in the plea agreement:

> THE COURT: Your plea agreement has a factual statement that's contained, I believe, in paragraph 3, which is set forth in your plea agreement on pages 2 and then on the top of page 3 as well. I know you've had the opportunity to review that factual statement with your attorney.
>
> Is the information that's contained in paragraph 3 of your plea agreement true and correct to the best of your knowledge and belief? You can take a moment to look over that again, if you'd like.
>
> MR. McCOY: If the Court please, we agree with the statement.
>
> DEFENDANT WINGATE: Yeah, I agree.
>
> THE COURT: Is that correct, Mr. Wingate?
>
> DEFENDANT WINGATE: Yes, sir.

[*Id.* at 29-30]

Wingate now contends that, because his attorney answered for him, the colloquy conducted by the Court was insufficient to ensure that his stipulation to the type and amount of drugs attributable to him was knowing and voluntary. [Record No. 480-1, pp. 6-7] However, Wingate overlooks the fact that he *personally* stated that he agreed with the factual statement in his plea agreement, and again *confirmed* that the information was correct after the Court renewed the question and cured any alleged error resulting from his counsel's brief interjection. To the extent that Wingate contends that the statement "Yes, sir," was spoken by

his attorney and not him personally, his assertion is incorrect and inconsistent with the sentencing transcript. As a result, Wingate's belated attempt to argue that he did not knowingly and voluntarily make the factual statement in his plea agreement fails.

Further, as the Magistrate Judge explained, Wingate's statements at his change of plea hearing undermine his assertion that his attorneys made additional promises to him and coerced him into pleading guilty to avoid trial. [Record No. 474, pp. 14-18] Wingate stated at his change of plea that no one had made any promises to him and no one had threatened or forced him to enter into the agreement. [Record No. 337, p. 15] And Wingate's counsel's sworn affidavit represents that no such promises were made. [Record No. 446-1, ¶¶ 5-6]

The Magistrate Judge also adequately addressed Wingate's arguments that his counsel provided ineffective assistance by failing to investigate the amount of drugs attributed to Wingate, object to the leadership enhancement, and challenge the use of wiretap evidence. [Record No. 474, pp. 10-14] Wingate's attorney stated that he "did not personally investigate the drug weights or number of the oxycodone or heroin involved in Mr. Wingate's case . . . because Mr. Wingate admitted to the number and weight of pills and capsules in the interviews, plea agreement and PSR." [Record No. 466-1, ¶ 7] Similarly, Wingate's attorney "did not challenge the leadership role because Mr. Wingate was clearly the leader and organizer of the drug ring," and had admitted as much "[i]n numerous interviews with law enforcement." [*Id.* ¶ 6] And he did not move to suppress the wiretap evidence because in his "professional opinion," the affidavit through which the wiretaps were permitted established probable cause. [*Id.* ¶ 4]

The Magistrate Judge correctly found that Wingate was unable to produce any evidence that his counsel should have further investigated the amount of drugs attributed to Wingate,

objected to the leadership enhancement, or challenged the wiretap evidence. [Record No. 474, pp. 10-14] As a result, Wingate was either unable to rebut the presumption that his counsel's conduct was reasonable or to establish prejudice. *See Strickland v. Washington*, 466 U.S. 668, 689, 693 (1984).

**IV.**

Finally, Wingate argues that his counsel's failures cumulatively amounted to ineffective assistance of counsel, even if none of them did individually. [Record No. 447-1, p. 21] But as the Magistrate Judge explained, Wingate's reliance on the cumulative doctrine is misplaced because "[w]here, as here, no individual ruling has been shown to be erroneous, there is no 'error' to consider, and the cumulative error doctrine does not warrant reversal." *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012).

**V.**

Wingate has failed to demonstrate that his counsel was conflicted, provided ineffective assistance which prevented him from knowingly and voluntarily entering into the plea agreement, coerced him into entering into the plea agreement, or committed cumulative error. Reasonable jurists would not debate the denial of Wingate's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Accordingly, A Certificate of Appealability shall not issue.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. Movant/Defendant Jeffrey Wingate's first motion to amend his initial objections to the R&R [Record No. 477] is **GRANTED**. His second motion to amend his initial objections to the R&R [Record No. 480] is **DENIED**, as moot.

2. The Magistrate Judge's Report and Recommendation [Record No. 474] is **ADOPTED** and **INCORPORATED** by reference.

3. Movant/Defendant Jeffrey Wingate's motion to vacate, set aside or correct her sentence under 28 U.S.C. § 2255 [Record No. 447] is **DENIED**. His claims are **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

4. A Certificate of Appealability is **DENIED**.

5. A Judgment in favor of the United States shall issue this date.

This 14th day of March, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge